# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* THOMAS C. GOAD REVOCABLE TRUST.

---

JAMES J. WILLIAMS,

        Appellant,

v

JON B. MUNGER, LINDA LARISCH, and TED GOAD,

        Appellees,

and

DOUGLAS C. GOAD,

        Other Party.

UNPUBLISHED
May 17, 2018

No. 337110
Oakland Probate Court
LC No. 2016-371937-TV

---

Before: O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

The present case involves a petition for supervision over the administration of a trust. During the course of these proceedings, the trial court sanctioned appellant James Williams. A settlement agreement was eventually reached resolving the issues related to the trust and the trial court entered a final order, dismissing all claims with prejudice. Appellant now appeals as of right, challenging the trial court's imposition of sanctions against him. Because the trial court did not abuse its discretion by using its inherent authority to sanction appellant, we affirm.

This case arises out of a dispute between three adult children—Linda Larisch, Ted Goad, and Doug Goad—and their father-settlor, Thomas Goad, over Doug's alleged exploitation of Thomas, and Thomas's overall capacity to execute amendments to his trust—the Thomas C. Goad Revocable Trust (the trust). Allegations regarding Thomas's capacity and potential exploitation by Doug were first raised in separate guardianship and conservatorship proceedings initiated by Linda and Ted. As part of the conservatorship proceedings, on August 11, 2016, Jon Munger was appointed as "sole trustee." On August 19, 2016, Linda and Ted filed the underlying petition in the current case, requesting, among other things, full supervision of the

-1-

trust, and the appointment of a special fiduciary to oversee Thomas's trust and nontrust assets. In the trust proceedings, the trial court confirmed the appointment of Munger as "sole trustee" in an order dated September 29, 2016.

According to appellant's representations in the trial court, he is a personal friend of Thomas and he was named as a co-trustee under amendments to the trust in June 2016. The petition in this case identified appellant as an "interested person." On October 21, 2016, appellant, an attorney, contacted Ted via e-mail and explained that, in his capacity as co-trustee, he wished to propose a settlement on behalf of Thomas. Appellant copied the attorneys of record on the e-mail, noting in a postscript that his direct contact with Ted was permissible pursuant to his authority as co-trustee. The e-mail sparked a string of replies in which both Munger and counsel for Ted and Linda, Amy Peterman, questioned appellant over his reference to himself as a "co-trustee." In an e-mail response to Munger, appellant explained:

> Of course I am aware of the Court's orders and [Munger's] involvement regarding [Thomas's] assets, and I am not challenging that. I'm sure Ms. Peterman can explain to her client, if she chooses, the difference between my co-trustee status with [Thomas] and [Munger's] status as special fiduciary or Trustee or whatever, with control over all of [Thomas's] assets.

Peterman then sent appellant an e-mail asking whether he believed he had authority as a trustee. Appellant did not respond, and Peterman sent appellant a second e-mail:

> Please answer the question—do you believe that you have current authority as a trustee[?] If you do not answer, based upon the representations in your emails, I will be forced to file a motion, and I will ask for costs because you are giving the impression that you believe you have authority as a trustee, i.e. at least . . . to settle, and I am not sure what else.

When appellant again did not answer, Peterman filed a motion requesting that the trial court enforce its previous appointment of Munger as sole trustee and sanction appellant for necessitating the filing of the motion.

At the hearing on the motion, Peterman requested fees in the amount of $2,850 for 10 hours of work at $285 an hour for having been required to file an otherwise unnecessary motion. The trial court granted the motion, reiterating that Munger was sole trustee with sole authority over the trust, and sanctioning appellant $1,500. Appellant filed a motion for reconsideration of the sanction, which the trial court denied. Appellant now appeals the imposition of the sanction.

Appellant contends on appeal that the trial court (1) failed to identify a statute or court rule authorizing attorney fees, (2) misinterpreted the rules of professional conduct and acted outside its authority in imposing a sanction for a violation of the rules, and (3) misinterpreted appellant's conduct as a violation of prior court orders.

"We review for an abuse of discretion a trial court's award of attorney fees and costs." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). A trial court's exercise of its inherent authority to sanction a litigant is also reviewed for an abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "An abuse of discretion occurs

-2-

when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith*, 481 Mich at 526.

"Michigan follows the American rule with respect to the payment of attorney fees and costs." *Haliw v Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005) (quotation marks and citation omitted). "The general American rule is that attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary." *Smith*, 481 Mich at 526 (quotation marks and citations omitted). "Exceptions to the general rule are construed narrowly." *Burnside v State Farm Fire and Cas Co*, 208 Mich App 422, 427; 528 NW2d 749 (1995).

One of the recognized exceptions to the American rule is the trial court's inherent authority to sanction a litigant or attorney for misconduct by assessing attorney fees. *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639; 607 NW2d 100 (1999). See also *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 595; 884 NW2d 587 (2015). When awarding attorney fees as a sanction for misconduct, the trial court should balance "the harshness of the sanction against the gravity of the misconduct," and with regard to the amount of attorney fees, the court should do no more than put the party requesting fees "in the position they would have been in absent the misconduct." *Persichini*, 238 Mich App at 642-643. For example, in *Persichini*, an attorney's deliberate improper questioning necessitated a mistrial, and this Court affirmed an award of attorney fees for the time that opposing counsel spent in court during the abrogated trial. *Id*. Similarly, in *Ford Motor Co*, 313 Mich App at 594-595, the defendant acted in an "unreasonable" manner by refusing the plaintiff's request to personally pick up a refund check, and this Court affirmed an award of attorney fees related to the ex parte motion the plaintiff had to file to stop the defendant from placing a multimillion-dollar check in the mail.

In this case, appellant, who the trial court noted had been a practicing attorney for 40 years,[1] contacted a party that he knew to be represented by counsel in order to propose a settlement on behalf of another party, who was also represented by counsel.[2] In making this contact, appellant held himself out as a co-trustee of the trust despite the fact that he had knowledge of two orders by the trial court which expressly identified Munger as the "sole

---

[1] In *Perischini*, it was relevant that the misconduct at issue came at the hands of "an experienced attorney who should have known better . . . ." *Persichini*, 238 Mich App at 642.

[2] Appellant contends that his communication was appropriate because he was not "representing a client" in the case, and thus, his communication did not violate MRPC 4.2(a). Although appellant's point is arguable at best given that he explicitly contacted Ted *on behalf of* Thomas, we nevertheless agree with appellant that violations of the rules of professional conduct provide "a basis for invoking the disciplinary process," and the MRPC clearly does not "give rise to a cause of action for enforcement of a rule or for damages . . . ." MRPC 1.0(b). Thus, had the trial court's sanction been rooted in a violation of the rules of professional conduct, the sanction would have been inappropriate. That having been said, appellant fails to establish that the trial court's sanction was actually based on a violation of the rules of professional conduct as opposed to the type of misconduct over which the trial court has inherent authority to sanction.

trustee." When Munger contacted appellant to clarify that appellant was *not* a trustee, appellant puzzlingly replied: "I am aware of the Court's orders and your involvement regarding [Thomas's] assets, and I am not challenging that. I'm sure Ms. Peterman can explain to her client, if she chooses, the difference between *my co-trustee status* with [Thomas] and your status as special fiduciary or Trustee or whatever . . . ." (Emphasis added). Given Munger's role as sole trustee and the underlying dispute regarding the alleged mismanagement of the trust, appellant's repeated claim to "co-trustee status" was understandably confusing and alarming, particularly given that appellant initiated contact with Ted in an apparent effort to commence settlement negotiations. Munger and Peterman were wise to question appellant's claim and to question what authority appellant believed he possessed. Indeed, Peterman *twice* asked appellant whether he believed he had authority as a trustee. After appellant failed to reply to the first inquiry, Peterman stated that, absent further clarification, she would be forced to file a motion. Despite this warning and the opportunity to prevent the necessity of a motion, by his own admission, appellant never replied to Peterman's e-mails. As a result, Peterman filed a motion to enforce the trial court's previous orders naming Munger as sole trustee.

Under the circumstances, the trial court's decision to exercise its inherent authority to impose sanctions was not outside the range of reasonable and principled outcomes. Peterman's motion, which would have been otherwise unnecessary, was absolutely necessitated by appellant's conduct. From the discussion at the hearing, it is also clear that the trial court believed that appellant acted unreasonably in holding himself out as a co-trustee in the face of two orders clearly designating Munger as the sole trustee. Faced with this misconduct, when granting Peterman's motion, the trial court apparently balanced the harshness of the sanction against the gravity of the misconduct when it awarded $1,500 in fees rather than the $2,850 requested, and such a sanction was reasonable in order to place Ted and Linda, at least partially, in the place they were before appellant's unreasonable conduct necessitated Peterman's motion. See *Persichini*, 238 Mich App at 642-643; *Ford Motor Co*, 313 Mich App at 594-595.

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly